UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ELKHART METAL FABRICATING, INC., and BULL MOOSE TUBE COMPANY, | )<br>)<br>) |
| Plaintiffs, | ) Case No. 14-cv-00705<br>)<br>) |
| v. | )<br>) |
| JOHN K. MARTIN, ELKHART METAL DISTRIBUTING, INC. and STEURY PROPERTY, L.L.C., | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM AND ORDER

This matter is before the Court on the Partial Motion to Dismiss ("Motion") filed on April 28, 2014 by Defendants John K. Martin ("Martin"), Elkhart Metal Distributing, Inc. ("EMD"), and Steury Property, L.L.C. ("Steury") (collectively "Defendants"). (ECF No. 13). The Motion has been fully briefed and is ready for disposition.

## BACKGROUND

According to the Petition filed by Plaintiffs Elkhart Metal Fabricating, Inc. ("EMF") and Bull Moose Tube Company ("Bull Moose") (collectively "Plaintiffs"), Martin and Bull Moose began near the end of 2012 to discuss the possibility that Bull Moose would purchase the assets of EMD. (Petition, ECF No. 4, ¶ 11). Ultimately, EMF, a wholly-owned subsidiary of Bull Moose, entered into an agreement to do so. (Petition ¶ 12). The agreement allegedly went wrong in a number of ways. Particularly relevant to this Motion are several representations EMD made during contract negotiations with EMF regarding the state of EMD's business affairs, many of which EMF later discovered to be false. (Petition ¶¶ 14, 20). These representations have been

memorialized in writing in the Asset Purchase Agreement ("APA"), which also set forth the obligations incurred by each party upon entering into it. (*See* Petition ¶ 14).

Plaintiffs initiated this action on February 11, 2014 by filing an eleven-count Petition in the Circuit Court for St. Louis County, Missouri. (Notice of Removal, ECF No. 1, ¶ 1). Relevant to this Motion are: Count I, which is a claim for breach of the Asset Purchase Agreement; Count II, which is a claim for fraudulent misrepresentation; and Count III, which is a claim for negligent misrepresentation. (Petition ¶¶ 26-47). In their Motion, Defendants seek dismissal of Counts II and III.

## MOTION TO DISMISS STANDARD

In ruling on a motion to dismiss, the Court must view the allegations in the complaint in the light most favorable to Plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Additionally, the Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). A motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Stated differently, to survive a motion to dismiss, the complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 1965 (citations omitted).

## ANALYSIS

*I. Dismissal of Counts II & III Based on Economic Loss Doctrine*

Defendants contend first that both the claim for fraudulent misrepresentation and the claim for negligent misrepresentation merely allege violations of duties imposed upon the

Defendants under the APA. (Memo in Support of Partial Motion to Dismiss, "Support Memo," ECF No. 14, at 3-5). According to Defendants, this means that that both counts are barred by the economic loss doctrine, which prevents actions sounding in contract from being recast as tort claims. *Id.* at 3-4. Plaintiffs counter that the misrepresentations were made in an effort by the Defendants to induce Plaintiffs to enter into a contractual agreement and that it is therefore acceptable to use the misrepresentations as a basis for separate tort claims. (Response Memo, ECF No. 17, at 2-3).

Missouri's iteration of the economic loss doctrine "prohibit[s] a plaintiff from seeking to recover in tort for economic losses that are contractual in nature." *Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.*, 332 S.W.3d 184, 192 (Mo. Ct. App. 2010). To determine whether the doctrine applies, Missouri courts must therefore determine both whether the loss is purely economic and whether the action brought is contractual or tortious in nature. The former is not at issue here, but the parties do contest the nature of the action. Missouri courts decide whether an action is tortious or contractual by "ascertain[ing] the source of the duty claimed to be violated." *State ex rel. William Ranni Assocs., Inc. v. Hartenbach*, 742 S.W.2d 134, 140 (Mo. 1987) (*en banc*). "[I]f the act done independent of the contract would result in a tort, it will continue to do so." *Khulusi v. Southwestern Bell Yellow Pages, Inc.*, 916 S.W.2d 227, 230. But if an act breaches a duty that exists only under the contract, the only avenue for recovery is a breach of contract action. *Id.*

Defendants' contention that Plaintiffs' fraudulent and negligent misrepresentations claims run afoul of the economic loss doctrine must fail. In Missouri, "fraudulent inducement to contract [is] the breach of a precontractual tort duty." *White v. Bowman*, 304 S.W.3d 141, 147 (Mo. Ct. App. 2009). Since negligent misrepresentation is substantially similar, it is reasonable

to conclude that Missouri courts would also consider negligent misrepresentation to be a breach of a precontractual duty.

Plaintiffs claim that Defendants made false representations for the purpose of inducing Plaintiffs to contract with them. (Petition ¶ 14; Response Memo at 3). For instance, Defendants allegedly made the representation "[t]hat the financial statements delivered by EMD and Martin 'fully and accurately presented the properties, financial condition and results of operations of [EMD] as of the respective dates and for the periods covered by such Financial Statements, all in accordance with and pursuant to GAAP, consistently applied.'" (Petition ¶ 14(A) (quoting Asset Purchase Agreement ("APA"), ECF No. 4-1)). Defendants also allegedly represented "[t]hat the 'books of account, accounting records, minute books, and stock record books . . . of [EMD] [were] complete, accurate and correct and have been maintained in accordance with reasonable business practices.'" (Petition ¶ 14(B) (quoting APA)). According to Plaintiffs, these statements were false. (Petition ¶ 20).

Even though these alleged misrepresentations were memorialized in the APA, none imposed any future obligation on Defendants. Rather, the statements are representations of existing fact. The duty not to fraudulently or negligently make factual misrepresentations to induce another person to form a contract is a duty that exists independently of any contractual obligations ultimately formed. Plaintiffs' claims are therefore not of the type barred by Missouri's economic loss doctrine.

Defendants' reliance on *Ryann Spencer Group, Inc. v. Assurance Co. of Am.*, 275 S.W.3d 284 (Mo. Ct. App. 2008) is unavailing. In *Ryann Spencer*, a property owner sought insurance for two properties through an insurance broker. *Id.* at 286. The broker ultimately procured two $500,000 policies from an insurance company. *Id.* When the properties suffered fire damage, the

property owner presented his claim to the insurance company, which refused to make any payments. *Id.* at 286-87. In his petition, the property owner alleged that the broker and insurance company made three "representations:" (1) that the broker would cause the insurance company to issue an insurance policy; (2) that the policy would insure "against the risk of loss by fire and other perils[;]" and (3) that in the event of damage, the insurance company "would timely pay [the property owner] as contracted in [the insurance policy.]" *Id.* at 287-88. The property owner then brought fraudulent and negligent misrepresentation claims based on the insurance company's refusal to pay. *Id.* at 297.

There is little similarity between the representations at issue here and the "representations" at issue in *Ryann Spencer*. The *Ryann Spencer* representations were contract terms. The broker and insurance company agreed to perform certain actions, presumably in exchange for the property owner's promise to pay fees and insurance premiums. The broker and insurance company then allegedly failed to uphold their ends of the bargains. Those alleged failures were breaches of contract. The representations at issue here, again, are statements about existing facts. They were not made in direct exchange for anything, and they did not obligate Defendants to do anything. Defendants are correct that under *Ryann Spencer* "[t]he mere failure to perform a contract cannot serve as the basis of tort liability[.]" *Id.* at 290. But the point is irrelevant in relation to representations like those at issue here, which impose no performance obligations.

*II. Dismissal of Defendant Steury from Counts II & III*

Defendants further contend that at least Defendant Steury should be dismissed in relation to Counts II and III because Steury was not a party to the APA and cannot be said to have made the representations contained in the APA. (Support Memo at 5). Privity of contract, however, is

not a required element of a tort claim. Plaintiffs have alleged that Defendant Martin made certain representations, memorialized in the APA, to Plaintiffs; that these representations were false; that Martin is the managing member of Steury; that Martin made these misrepresentations as an agent of Steury in order to induce Plaintiffs to enter into various agreements; and that Plaintiffs ultimately relied on these misrepresentations to their detriment. (Petition ¶¶ 5, 11, 14, 15, 16, 20). These allegations are sufficient to survive the pleading stage for both the fraud claim and the negligent misrepresentation claim.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Partial Motion to Dismiss, (ECF No. 13), is **DENIED**.

Dated this 1st day of July, 2014.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE