UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ELKHART METAL FABRICATING, INC., and BULL MOOSE TUBE COMPANY, | ) ) ) ) |
| | ) Case No. 14-cv-00705 |
| Plaintiffs, | ) ) |
| v. | ) ) |
| JOHN K. MARTIN, ELKHART METAL DISTRIBUTING, INC. and STEURY PROPERTY, L.L.C., | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Motion to Dismiss Counts IV, V and VI of Defendants' Fourth Amended Counterclaim. (ECF No. 52). The Motion has been fully briefed and is ready for disposition.

## BACKGROUND

Plaintiffs Elkhart Metal Fabricating, Inc. ("EMF") and Bull Moose Tube Company ("Bull Moose") initiated this action on February 11, 2014 by filing suit against Defendants John K. Martin, Elkhart Metal Distributing, Inc. ("EMD"), and Steury Property, L.L.C. ("Steury") in the Circuit Court for St. Louis County, Missouri. (Removal Notice, ECF No. 1, ¶ 1). Defendants then timely removed to this Court on April 7, 2014. *Id.* They filed an answer on April 28, 2014, which has been amended four times and currently includes several counterclaims against Plaintiffs. (4th Amd. Answer, ECF No. 47).

The counterclaims involve various business agreements that Defendants Martin and EMD entered into with Plaintiffs EMF and Bull Moose. Two agreements are relevant here. The first is

1

the Asset Purchase Agreement, under which EMF, a wholly-owned subsidiary of Bull Moose, agreed to purchase the assets of EMD. (Complaint, ECF No. 4, ¶¶ 11, 12). The second is the Employment Agreement, under which "Martin agreed to be employed by EMF as President of EMF for a period of five years." (4th Amd. Answer, p. 26 ¶ 10).

Defendants allege in their counterclaims, *inter alia*, that Plaintiffs negligently and fraudulently made misrepresentations in the course of negotiating these agreements. *Id.* pp. 32-34. They also allege that Plaintiffs breached fiduciary and disclosure duties owed to Martin that arose in the course of his employment with EMF. *Id.* p. 35. These allegations make up Counts IV, V, and VI of Defendants' counterclaims. Plaintiffs seek in their Motion to have each of these claims dismissed for failure to state a claim. (Motion ¶ 3).

## **MOTION TO DISMISS STANDARD**

Fed. R. Civ. P. 8(a)(2) requires "'a short and plain statement of the claim showing that the pleader is entitled to relief' . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). When ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), courts must view the allegations in the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Courts must also "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005). A Rule 12(b)(6) motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (2007). Stated differently, to survive a Rule 12(b)(6) motion, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555 (citations omitted).

**DISCUSSION**

*I.     Counts IV and V*

Plaintiffs contend Count IV, the fraudulent misrepresentation claim, and Count V, the negligent misrepresentation claim, should be dismissed because Defendants insufficiently pled that the alleged misrepresentations caused damages. "Specifically, Defendants allege that 'EMD and Martin in fact relied, and had a right to rely upon, the misrepresentations and omissions by BMT *when he created and submitted sales forecasts to BMT*.'" (Plaintiff Support Memo, ECF No. 53, at 4 (emphasis in original) (footnote omitted) (quoting 4th Amd. Answer, p.33 ¶ 75)). Plaintiffs contend this allegation is insufficient because the Complaint "fails to allege any facts that suggest how Martin's sales forecasts, if indeed they were influenced by the alleged misrepresentations, proximately caused injury to Martin or EMD." *Id.*

Defendants respond that Plaintiffs argument is beyond the scope of a motion to dismiss. (Defendant Response, ECF No. 56, at 5). This is because "Defendants have alleged damage, and are not required to plead the extent of that damage at this time. The allegation must be taken as true, though Plaintiffs are certainly entitled to discovery on the issue." *Id.* Defendants further allege that the misrepresentations related to EMF's business performance, which was part of the basis for Martin's compensation. *Id.* at 5-6. Thus, the misrepresentations had an impact on Martin's willingness to enter into the agreement. *Id.*

There is a preliminary question here as to whether Missouri or Indiana law applies. Both parties have noted the issue in their briefing. Neither party, however, attempts to resolve the issue, and it will have no impact on the outcome of the Motion. In both Missouri and Indiana, one element of the torts of fraudulent and negligent misrepresentation is causation. *Verni v. Cleveland Chiropractic Coll.*, 212 S.W.3d 150, 154 (Mo. 2007) (*en banc*) (Missouri fraudulent

misrepresentation); *Reed v. Reid*, 980 N.E.2d 277, 292 (Ind. 2012) (Indiana fraudulent misrepresentation); *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 134 (Mo. 2010) (*en banc*) (Missouri negligent misrepresentation); *U.S. Bank, N.A. v. Integrity Land Title Corp.*, 929 N.E.2d 742, 747 (Ind. 2010) (Indiana negligent misrepresentation). Specifically, a claimant must show that some injury was caused by the tortfeasor's alleged misrepresentations. Thus, to survive a Rule 12(b)(6) motion under either Indiana or Missouri misrepresentation law, a claimant must allege sufficient facts to establish a plausible claim that the alleged tortfeasor caused him injury.

In support of Count IV, the fraudulent misrepresentation claim, Defendants make the following factual allegations.

> 62. Jack Meyer, President of [Bull Moose], orally represented to EMD and Martin that [Bull Moose] would give EMF pricing that would give EMF a significant advantage over EMF's competition.
>
> 63. Jack Meyer, President of [Bull Moose], represented to EMD and Martin that EMF would have capital to expand product offerings and capacity.
>
> 64. Jack Meyer, President of [Bull Moose], represented to EMD and Martin that it would support efforts to increase sales at EMF.
>
> 65. Jack Meyer, President of [Bull Moose], represented to EMD and Martin that it would not compete with EMF.
>
> 66. [Bull Moose] made these representations on multiple occasions during the time period in which the APA was being negotiated.
>
> . . .
>
> 74. [Bull Moose] intended that EMD and Martin rely upon the misrepresentations and omissions.
>
> 75. EMD and Martin in fact relied, and had a right to rely upon, the misrepresentations and omissions by [Bull Moose] when he created and submitted sales forecasts to [Bull Moose].

4

> 76. EMD and Martin suffered injury as a result of their reliance on the misrepresentations and omissions by [Bull Moose].

(4th Amd. Answer p. 32 ¶¶ 62-66, p.33 ¶¶ 74-76).

In Count V, the negligent misrepresentation claim, Defendants repeat the allegations as to what misrepresentations Bull Moose made, then allege the following:

> 83. The supplied false information and omitted material information was intentionally provided for the guidance of EMD and Martin in connection with the APA and Employment Agreement.
>
> 84. In doing so, [Bull Moose] failed to exercise reasonable care or competence in obtaining or communicating the information to EMD and Martin.
>
> 85. EMD and Martin justifiably relied on the information.
>
> 86. EMD and Martin suffered pecuniary loss caused by their justifiable reliance upon the information supplied or omitted by [Bull Moose].

(4th Amd. Answer p. 34 ¶¶ 83-86).

Defendants' factual allegations are insufficient to state a plausible claim for fraudulent or negligent misrepresentation. In Count IV, Defendants make allegations regarding the various misrepresentations made, the manner in which Defendants relied on those allegations, and a conclusory allegation that Defendants "suffered injury." But there is nothing connecting the actions Defendants took in reliance on Plaintiffs' alleged misrepresentations with the alleged injury. This inadequacy is due primarily to the vague nature of the reliance allegation and conclusory nature of the injury allegation. Defendants allege that Martin "created and submitted sales forecasts" in reliance upon Plaintiffs' allegations but do not indicate the significance of those forecasts. Combined with Defendants' conclusory allegation that Defendants "suffered injury," it is impossible to discern how Martin's actions are allegedly related to the injury Defendants suffered and, consequently, how the misrepresentations caused the injury.

5

Count V fares no better. In that count, Defendants simply allege that they "justifiably relied" on the misrepresented information and "suffered pecuniary loss" as a result. These are nothing more than bare legal conclusions. There is therefore no need under *Twombly* to take them as true for purposes of this motion to dismiss. And more relevant here, there is nothing to connect the two allegations and thus nothing on which to conclude that Plaintiffs' misrepresentations caused Defendants' injuries. In short, Counts IV and V are speculative claims for fraudulent and negligent misrepresentation that cannot survive this Rule 12(b)(6) motion.

II. *Count VI*

In Count VI, Defendants claim that Plaintiffs breached both a fiduciary duty and a disclosure duty owed to Defendants. Plaintiffs contend this count should be dismissed because it does not contain enough facts to support the existence of a fiduciary relationship. According to Plaintiffs, "Defendants allege that EMF owed Martin a fiduciary duty merely by virtue of the fact that it employed him." (Plaintiff Support Memo at 6). On its own, this allegation is not sufficient to support the existence of a fiduciary relationship. *Id.*

Defendants respond that, contrary to Plaintiffs' assertions, "Indiana imposes a clear fiduciary duty on an employer, and Missouri imposes a duty on parties depending on the facts of their relationship in a particular case . . . ." (Defendant Response at 8). Specifically, Defendants assert that "[u]nder Indiana law, employment creates a special relationship. The employer owes special duties to the employee. Among these is a duty of disclosure." *Id.* at 7 (internal citations omitted). Defendants also contend that fiduciary relationships in Missouri are determined on a case-by-case basis, and that "[o]nce an agency relationship has been established, a fiduciary relationship arises as a matter of law." *Id.* In addition to the fiduciary relationship, "[a] duty to

disclose is further imposed where one party expressly, or by clear implication, places special confidence in the other." *Id.*

Under both Missouri and Indiana law, one element of a breach of fiduciary duty claim is the existence of a fiduciary relationship. *Grewell v. State Farm Mut. Auto. Ins. Co.*, 162 S.W.3d 503, 508 (Mo. Ct. App. 2005) (Missouri law); *York v. Fredrick*, 947 N.E.2d 969, 978 (Ind. Ct. App. 2011) (Indiana law). In Missouri, such a relationship has five elements:

> (1) one party must be subservient to the dominant mind and will of the other party as a result of age, state of health, illiteracy, mental disability, or ignorance; (2) things of value such as land, monies, a business, or other things of value, which are the property of the subservient party, must be possessed or managed by the dominant party; (3) there must be a surrender of independence by the subservient party to the dominant party; (4) there must be an automatic and habitual manipulation of the actions of the subservient party by the dominant party; and (5) there must be a showing that the subservient party places a trust and confidence in the dominant party.

*A.G. Edwards & Sons, Inc. v. Drew*, 978 S.W.2d 386, 394 (Mo. Ct. App. 1998). "There are, however, instances in which a fiduciary relationship exists absent the above elements." *Id.* Examples include the attorney-client relationship and the physician-patient relationship. *Id.* Missouri courts have also recognized an insurer-insured fiduciary relationship that arises as a matter of law. *Grewell*, 162 S.W.3d at 509.

Within this framework, Defendants contend that, in Missouri, "[o]nce an agency relationship has been established, a fiduciary relationship arises as a matter of law." (Defendant Response at 7 (citing *A.G. Edwards*, 978 S.W.2d at 395). This is an accurate statement of Missouri law, but one that is not relevant under these facts. It is true that in Missouri "[e]very employee owes his or her employer a duty of loyalty." *Midwestern Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 15 (Mo. 2012) (*en banc*). Missouri courts have also made "clear that officers and directors of public and closely held corporations are fiduciaries . . . ." *Id.* There are

7

no Missouri cases, however, that stand for the proposition that an employer corporation necessarily owes fiduciary duties to its employees as a matter of law. This does not mean that a fiduciary relationship can never arise in such a situation. It means such a duty does not arise automatically due to the nature of the relationship. Instead, a claimant who wishes to demonstrate the existence of a fiduciary duty owed by an employer to an employee must plead and prove the five elements set forth above.

Apart from fiduciary duties, Missouri also recognizes a duty to disclose in certain situations, including employment relationships. *McCoy v. Spelman Mem'l Hosp.*, 845 S.W.2d 727 (Mo. Ct. App. 1993). In Missouri, a disclosure duty claim is a type of misrepresentation claim. *White v. Bowman*, 304 S.W.3d 141 (Mo. Ct. App. 2009). "A duty to disclose exists where there is a relationship of trust and confidence between the parties or where one party has superior knowledge or information of a material fact that is not within the fair and reasonable reach of the other party." *Id.* at 149.

Indiana law is slightly different from Missouri law in that it specifically recognizes duties owed by an employer to an employee, although the Indiana Supreme Court has stopped short of calling those duties "fiduciary." In *Northern Indiana Public Service Co. v. Bloom*, 847 N.E.2d 175 (Ind. 2006), the court explained that "[e]mployment creates a species of agency relationship. The employee owes fiduciary duties to the employer. The employer also owes special duties to the employee. Among these is a duty of disclosure." *Id.* at 187 (internal citations omitted). It explained that this disclosure duty requires a principal "'to inform the agent of risks of physical harm or pecuniary loss which, as the principal has reason to know, exist in the performance of authorized acts and which he has reason to know are unknown to the agent." *Id.* (quoting *Restatement (Second) of Agency* § 435 (1958)). The unknown information that has been withheld

must be of a type that is "likely to subject [the employee] to pecuniary loss" or physical harm. *Id.* at 188 (internal quotation marks omitted). To survive this Rule 12(b)(6) motion, Defendants must have pled sufficient facts to support a plausible claim under one of these theories.

Defendants have alleged the following facts in support of their claim that EMF breached either the fiduciary duty or the duty of disclosure it owed to Martin:

> 89. EMF employed Martin and consented to Martin acting on EMF's behalf and subject to its control. A principal and agent relationship existed between EMF and Martin.
>
> 90. A fiduciary relationship existed between EMF and Martin.
>
> 91. A large portion of Martin's compensation with EMF directly related to EMF's sales for the fiscal year.
>
> 92. Jack Meyer, President of [Bull Moose], orally represented to EMD and Martin that [Bull Moose] would give EMF pricing that would give EMF a significant advantage over EMF's competition.
>
> 93. This representation was false and affected Martin's pecuniary interests.
>
> 94. EMF had a fiduciary duty to disclose information to Martin that would likely subject him to pecuniary loss.
>
> 95. EMF had reason to know that the information was unknown to Martin.
>
> 96. EMF breached its fiduciary duty by failing to disclose the information to Martin.
>
> 97. Due to EMF's failure to disclose the information, Martin suffered pecuniary loss.

(4th Amd. Answer p. 35 ¶¶ 89-97).

There are significant shortcomings in these allegations. Missouri law, as explained above, requires the existence of a fiduciary relationship for a breach of fiduciary duty claim. The only fact Defendants have alleged to support the existence of such a relationship is that Martin was an

employee of EMF. On its own, this is not sufficient to support the existence of a fiduciary relationship under Missouri law. Without an adequately pled fiduciary relationship, Defendants' breach of fiduciary duty claim is not plausible under Missouri law.

Nor are there sufficient allegations to support the existence of a relationship of trust and confidence, which Missouri requires for a breach of disclosure duty claim. In Missouri, "'an employer-employee relationship, without more, is insufficient to cause a confidential relationship to exist as to knowledge naturally acquired during employment.'" *Roberts*, 367 S.W.3d at 16 (quoting *Walter E. Zemitsch, Inc. v. Harrison*, 712 S.W.2d 418, 421 (Mo. Ct. App. 1986)). Again, Plaintiffs have alleged only that a duty to disclose arose because Martin was an employee of EMF. In addition to being insufficient to support the existence of a fiduciary duty, this is also insufficient to support the existence of a confidential relationship giving rise to a disclosure duty under Missouri law.

Defendants' claim is also inadequate under Indiana law. The shortcomings under Indiana law are similar to the shortcomings in the misrepresentation claims: it is impossible to discern how the alleged withholding of information, even if it breached a disclosure duty, caused damage to Martin. The factual allegation Defendants make is that EMF failed to disclose prior misrepresentations made to Martin by Bull Moose regarding the pricing Bull Moose would give EMF. This pricing would have given "EMF a significant advantage over EMF's competition." (4th Amd. Answer p. 35 ¶ 92). It is understandable how a failure to give EMF competitive pricing would impact its business performance and therefore Martin's pecuniary interests, since his compensation was allegedly based on EMF's performance. But Defendants' pleadings give no indication as to how Bull Moose's deceit "was likely to subject [Martin] to pecuniary loss" after Martin had already become an employee of EMF, *Bloom*, 847 N.E.2d at 188 (internal

quotation marks omitted), and how disclosure of that deceit would have changed the situation. Any attempt based on Defendants' factual allegations to connect EMF's failure to disclose Bull Moose's misrepresentation with Martin's unspecified pecuniary loss is therefore speculative. Such a speculative claim is not sufficient under *Twombly*. Thus, regardless of whether Indiana or Missouri law applies, Defendants' claim for breach of fiduciary duty or the duty of disclosure cannot survive this Rule 12(b)(6) motion.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Dismiss Counts IV, V and VI of Defendants' Fourth Amended Counterclaim, (ECF No. 52), is **GRANTED**, and Counts IV, V, and VI of Defendants' Fourth Amended Answer, (ECF No. 47), are **DISMISSED**.

Dated this 9th Day of April, 2015.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE